635 So.2d 1389 (1994)
In the Matter of the ESTATE OF Richard PETRICK, Deceased.
Alice Vann, Administratrix
v.
MISSISSIPPI NEUROSURGERY, P.A.
No. 92-CA-00680.
Supreme Court of Mississippi.
April 14, 1994.
*1390 Charles D. Easley, Jr., Easley Law Office, Columbus, for appellant.
P. Nelson Smith, Aubrey E. Nichols, Gholson Hicks Nichols & Ward, Columbus, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
SULLIVAN, Justice, for the Court:
Richard Petrick died intestate on June 10, 1991, in Lowndes County, Mississippi. Alice Vann, Petrick's ex-wife, and also the mother, guardian, and next friend of Petrick's only minor child is the administratrix of the Petrick estate. Petrick died seized of personal property with a value believed to be approximately $32,000.
On August 5, 1991, Vann filed a Proof of Publication, which states that notice to potential creditors of the estate of Richard Petrick was published on July 3, 10, and 17, 1991, in The Commercial Dispatch. On September 4, 1991, Vann filed an Affidavit of Mailing stating that she had made reasonably diligent efforts to identify persons having claims against the Estate of Richard Petrick. In her affidavit, she listed creditors who received notice by mail. The list does not include Dr. Poche or Mississippi Neurosurgery, P.A., the appellee here. The list does include Prairie Anesthesia Associates and Golden Triangle Regional Medical Center. Vann's first notice by publication was not in compliance with Miss. Code Ann. § 91-7-145, as it was published prior to her filing her affidavit on September 27, 1991. She filed another Proof of Publication stating that notice to creditors was published on September 9, 16, and 23, 1991 in The Commercial Dispatch.
On January 7, 1992, Mississippi Neurosurgery, P.A. filed a Probate of Claim, asserting *1391 an interest against the Estate of Richard Petrick in the amount of $6,220.00 for medical work performed. Vann filed an Objection to Claim of Probate on April 24, 1992, asserting that the claim was untimely and therefore barred.
On June 4, 1992, Chancellor Robert L. Lancaster overruled Vann's objection and Mississippi Neurosurgery, P.A.'s probated claim was allowed as a valid claim against the estate.
The only issue to be decided by this Court is whether or not the chancellor erred in allowing the untimely filed claim of Mississippi Neurosurgery, P.A., as a valid claim against the Estate of Richard Petrick, Deceased.

FACTS
Beverly Chopin, the office manager of Mississippi Neurosurgery, P.A., testified that she is the custodian of billing records, including hospital records and care provided by the physicians, and takes care of insurance claims for Mississippi Neurosurgery, P.A. She testified that on May 28, 1991, Petrick was admitted to the Golden Triangle Regional Medical Center emergency room unconscious. Dr. Poche of Mississippi Neurosurgery, P.A., was on call and treated Petrick. Dr. Poche subsequently performed a craniotomy for an aneurysm. Chopin sent out a bill for those services on October 7, 1991, addressed to the Estate of Richard Petrick, 934 Yorkville RD South, requesting payment in the amount of $6,220.00. At the time of this billing the payment was 120 days past due. Chopin testified that since Petrick's surgery was in June, in accord with her company's policy, statements began to go out in July. She got no response from any billing until she began receiving returned mail in October.
Chopin testified that she spoke with Alice Vann upon learning through Boundary Health Care that the insurance checks for Petrick's hospital stay and medical services had been issued to Petrick. Boundary Health Care gave Chopin Vann's telephone number. Chopin called Vann and found out that Vann had received the Blue Cross payments for the partial cost of Petrick's care. This was approximately November 30, 1991. Chopin admitted that at this time she knew that the estate had been set up and that Vann was depositing checks into the estate account. Chopin said she never received notice from the estate that the insurance checks had been received, and did not file a claim against the estate until January 7, 1992. Chopin testified that although she reads The Commercial Dispatch, neither she nor anyone else at Mississippi Neurosurgery, P.A., saw the publication giving notice to creditors.
Alice Vann testified as an adverse witness that she was the administratrix of the estate of her ex-husband, and that she was aware that he went into the hospital in May, 1991. Vann did not know why Petrick was in the hospital, but she was aware that he died of a cerebral hemorrhage. Vann stated that Boundary Health Care and her lawyers made most of the inquiries to determine creditors. Vann thought she remembered the name of Dr. Poche, but she had never received an invoice for his services.
Vann testified she had no reason to call Mississippi Neurosurgery, P.A., or Dr. Poche's office to ask about any outstanding bills because she handled everything through Blue Cross through Boundary. Vann said that Boundary Health Care and two attorneys assured her that all billing had been taken care of and that everything had been paid. She did not personally check the break down of the billing nor did she look for individual invoices. She just knew the total amount for which the estate was responsible according to the lawyers and Boundary Health Care. Vann trusted that the estate attorney and her ex-husband's employer had been thorough in their search for potential creditors. When asked how GTR and the Anesthesiology group from GTR made it onto her affidavit, while Dr. Poche and Mississippi Neurosurgery, P.A., did not, Vann said she did not know the individual doctors *1392 who were involved. Vann testified that she did not personally send Mississippi Neurosurgery, P.A., notice to probate a claim, but believed that her lawyers did. Vann was unable to produce a document to that effect, however.
When Vann was asked, in reference to her affidavit, what reasonably diligent efforts she had made to ascertain creditors, she replied, "[y]ou would really have to talk to Boundary Health Care and GTR." Vann testified that she did not personally call every doctor at GTR, but she hired a lawyer to handle "all of that legal work." Vann testified that starting around June 20, 1991, she opened and read all of Petrick's mail and never found a bill from Mississippi Neurosurgery, P.A., or Dr. Poche. She did know that Dr. Poche was a neurosurgeon. Vann did not specifically remember talking with Chopin about a bill, but stated that whenever she was contacted regarding a bill, she requested that the interested party send an invoice and call the estate lawyer. Vann did testify that the estate attorney told her he had been contacted about outstanding medical bills, and said he had told those parties to file a claim. Vann concluded that she had done all that she could to ascertain creditors of Petrick's estate. Vann admitted that when talking about all her efforts to ascertain creditors, she really meant the efforts of Boundary Health Care and her lawyers.

LAW
Notice to creditors of estate, § 91-7-145, Miss. Code Ann. (Supp. 1993), effective from and after July 1, 1989, states in pertinent part:
(1) The executor or administrator shall make reasonably diligent efforts to identify persons having claims against the estate. Such executor or administrator shall mail a notice to persons so identified, at their last known address, informing them that a failure to have their claim probated and registered by the clerk of the court granting letters within the ninety (90) day period provided for in subsection (2) of this section will bar such claim.
(2) The executor or administrator shall file with the clerk of the court an affidavit stating that such executor or administrator has made reasonably diligent efforts to identify persons having claims against the estate and has given notice by mail as required in subsection (1) of this section to all persons so identified. Upon filing such affidavit, it shall be the duty of the executor or administrator to publish in some newspaper in the county a notice requiring all persons having claims against the estate to have the same probated and registered by the clerk of the court granting letters, within ninety (90) days, which notice shall state the time when the letters were granted and that a failure to probate and register for ninety (90) days will bar the claim. The notice shall be published for three (3) consecutive weeks, and proof of publication shall be filed with the clerk... .
This statute had been in effect nearly two years when Petrick died on June 10, 1991.
From a reading of this statute it is clear that an administratrix has four responsibilities: (1) she must make reasonably diligent efforts to ascertain creditors having claims against the estate and mail them notice of the 90 day period within which to file a claim; (2) she must file an affidavit stating that she has complied with the first subsection; (3) she must publish in some newspaper in the county a notice to creditors explaining that they have 90 days within which to file claims against the estate; and (4) she must file proof of publication with the clerk of court.
Under the statute, if Vann, through reasonably diligent efforts could have identified Mississippi Neurosurgery, P.A., as a "person" having a claim against the estate, she had the duty to mail notice prior to filing her affidavit, publishing notice in the paper, and filing proof of publication. In other words, if the creditor could have been ascertained through reasonably diligent efforts, mere publication in the newspaper in the county, absent notice by mail, does not comply with the mandates of the statute.
*1393 The statute does not specifically allow for notice by publication as a substitute for actual notice by mail; rather, notice by publication is a requirement in addition to providing creditors notice by mail. It stands to reason that the notice by publication requirement is to further ensure that those creditors who were served by mail are reminded of the time limit to file claims, as well as to give constructive notice to creditors who could not be ascertained through reasonably diligent efforts.
We are called upon to determine what constitutes "reasonably diligent efforts" for purposes of the statute, and at least to make a determination as to whether or not Vann, based on the facts of this case, was reasonably diligent in her efforts to ascertain creditors who might have claims against the Petrick estate.
The chancellor relied on the United States Supreme Court decision in Tulsa Professional Collection Services v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), handed down the year preceding our legislative amendment of § 91-7-145, to reach the conclusion that Mississippi Neurosurgery P.A.'s untimely claim is valid against Petrick's estate. The chancellor found that Mississippi Neurosurgery, P.A., was a reasonably ascertainable creditor which did not receive actual notice that the non-claim statute had begun to run. Presumably, the chancellor determined, as did the United States Supreme Court in Pope, that the Due Process Clause of the Fourteenth Amendment of the United States Constitution required actual notice in this case.
It must be mentioned that the issue in Pope was different from the issue in this case in that, in Pope, the Oklahoma statute in question only required the executrix to give creditors notice by publication. Pope, 485 U.S. at 481, 108 S.Ct. at 1342. The Mississippi statute, enacted shortly after Pope, clearly requires an administratrix to give creditors who can be discovered through reasonably diligent efforts notice by mail and notice by publication. However, the issue of due process as fleshed out in the Pope case is relevant in resolving whether Vann's actions will suffice under the Mississippi statute, thus determining whether Mississippi Neurosurgery, P.A., will be deprived of its property interest in a claim against the Petrick estate. The question here is not whether the Mississippi statute survives due process scrutiny, but whether Vann's efforts meet the requirements of due process, as seen in the Pope case, and the language of § 91-7-145.
We spoke favorably of Pope in Caldwell v. Caldwell, 533 So.2d 413 (Miss. 1988), stating that
it is well to call attention to the bench and bar to the decision of the United States Supreme Court of Tulsa Professional Collection Services v. Pope, 485 U.S. [478], 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). At issue in the Pope case, supra, was whether Oklahoma's probate law providing for the barring of a creditor's claim complied with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In that case the decedent Pope died while a patient at a hospital. In due course the hospital assigned its claim for the decedent's last illness to Tulsa for collection, only to be denied payment by the executrix for failure to file its claim within the two month time period under Oklahoma probate law to file their claims following the estate's notice to creditors.
The executrix relied upon the substituted publication of notice rather than actual notice to creditors. The United States Supreme Court in Pope held, in summary form, the following:
[i]t was held that the Oklahoma nonclaim statute violated the due process clause of the Federal Constitution's Fourteenth Amendment, because, although the statute provided solely for publication by notice, due process required that actual notice be given to known or reasonably ascertainable creditors of the decedent by mail or other means as certain to insure actual notice, for (1) such a creditor's claim  a cause *1394 of action against the estate for an unpaid bill  was an intangible property interest protected by the due process clause; (2) the statute in question was not a self-executing statute of limitations; (3) instead, the pervasive and substantial involvement of the state probate court in the activation and operation of the statute's time bar constituted sufficient state action to implicate due process; (4) the statute could adversely affect a creditor's protected property interest by barring untimely claims and causing probate proceedings to extinguish such claims; and (5) although the state had a legitimate interest in the expeditious resolution of probate proceedings, (a) creditors had a substantial practical need for actual notice, (b) the required actual notice was not so cumbersome as to hinder unduly the dispatch with which probate proceedings are conducted, and (c) probate proceedings were not so different in kind as to require a different result from other analogous situations in which the pressing need to proceed expeditiously had been held not to justify less than actual notice.
Caldwell, 533 So.2d at 417-418. We find that (1) whether or not sufficient state interest exists; and (2) whether or not a protected property interest exists in this case to implicate the Due Process Clause of the Fourteenth Amendment of the United States Constitution, are questions subject to de novo review as questions of law. Myers v. Blair, 611 So.2d 969, 971 (Miss. 1992). These are not questions of fact, subject to the manifest error/substantial evidence rules, as they are not determinable based on the credibility of witnesses at a hearing before the chancellor. Id.
The Due Process Clause of the Fourteenth Amendment is implicated in the present case. The instant case is very similar to the situation that existed in the Pope case. On the state action issue here, like in Pope, the state court is intimately involved throughout the probate proceedings. In fact, here, just as in Pope,
[t]he nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice... .
Id., 485 U.S. at 487, 108 S.Ct. at 1346. Furthermore, our courts are essential to the probate proceedings in that the administratrix may only validly publish notice in some newspaper, which triggers the 90 day limit to file a claim pursuant to § 91-7-145 and § 91-7-151, after filing an affidavit with the clerk of court stating that she has made reasonably diligent efforts to identify persons having claims against the estate and has given notice by mail as required in subsection (1) of § 91-7-145. Thus, the nonclaim statute is not a self-executing statute of limitations; rather, the role played by the chancery court, upon which the time bar is dependent, is sufficient state action to implicate the Fourteenth Amendment.
With regard to the question of whether or not Mississippi Neurosurgery, P.A.'s claim against the estate is a protected property interest, the Pope Court stated, "[a]ppellant's interest is an unsecured claim, a cause of action against the estate for an unpaid bill. Little doubt remains that such an intangible interest is property protected by the Fourteenth Amendment." Id., 485 U.S. at 485, 108 S.Ct. at 13. Therefore, as a matter of law, Mississippi Neurosurgery, P.A.'s claim against the Petrick estate is a property interest protected by the Fourteenth Amendment.
Once it is determined that the Due Process Clause of the Fourteenth Amendment of the United States Constitution is applicable to the issue at hand, it is necessary to review the chancellor's factual determination that Mississippi Neurosurgery, P.A., was a reasonably ascertainable creditor. We will not disturb the chancellor's findings so long as they are supported by substantial evidence in the record. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
*1395 We find that a "reasonably ascertainable creditor" is one who is discoverable through "reasonably diligent efforts," and therefore the chancellor's determination of the former is a finding as to the latter. However, even if we did not hold that those two concepts are synonymous, we would still presume that the chancellor made a finding that Vann did not exercise reasonably diligent efforts to identify persons having claims against the estate, as that would be a finding consistent with his judgment. Love v. Barnett, 611 So.2d 205, 207 (Miss. 1992), citing Tedford.
The record supports the chancellor's finding. Vann knew Petrick was treated at GTR and that he died there. She also sent notice to GTR hospital and the anesthesiology group to file a claim, but failed to give notice to the treating physician, Dr. Poche, or Mississippi Neurosurgery, P.A. Furthermore, Vann testified that in actuality, she handed over her statutorily mandated responsibilities to her lawyers and Boundary Health Care. That is, by her own admission, she did not personally exercise any effort to discover persons having claims against the estate. Chopin, the office manager at Mississippi Neurosurgery, P.A., testified that she began sending invoices for the services rendered on behalf of Petrick in July, 1991. Chopin also stated that she personally contacted Vann in November regarding the outstanding bill, but that she never received notice of the time limit within which to file a claim. Therefore, the chancellor's determination that Mississippi Neurosurgery, P.A., was a reasonably ascertainable creditor, and that Vann did not exercise reasonably diligent efforts to discover Mississippi Neurosurgery, P.A., was not manifestly erroneous.
Vann's mere publication of notice, in light of the chancellor's correct determination that she could have reasonably ascertained Mississippi Neurosurgery, P.A., as a creditor, did not comply with the terms of the statute mandating notice by mail. Furthermore, the Due Process Clause of the Fourteenth Amendment of the United States Constitution is applicable, reinforcing the chancellor's conclusion that notice was insufficient in this case, thus the statutory time bar did not apply, and Mississippi Neurosurgery, P.A.'s untimely claim is valid against the estate of Richard Petrick. This assignment of error is without merit. We, therefore, affirm.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS Jr. and SMITH, JJ., concur.
McRAE, J., concurs in results only.