# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

m 99-60076
_____

COMMERCIAL SERVICES OF PERRY, INC.,

Plaintiff-Appellant,

VERSUS

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

January 17, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

Commercial Services of Perry, Inc. ("CSP"), sued the Federal Deposit Insurance Corporation ("FDIC"), claiming the FDIC had sold, for its own profit, lands held pursuant to two deeds of trust that the FDIC had previously sold to CSP. Thus, CSP claims, the proceeds of that sale inure to it. The FDIC asserts that the deeds of trust had been foreclosed on while the FDIC continued to hold it, and thus that the sale of assets to CSP did not include the relevant deeds of trust, which had been extinguished before the sale. Because we agree with the district court that the relevant statute of limitations expired before suit was filed, we affirm.

## I.

CSP purchases bad loans and attempts to collect the deficiency balance. It bought a package of loans from the FDIC that included three loans known as the "Sams Loans," which were originally secured by two deeds of trust.

The loan sale agreement between CSP and FDIC, entered into on November 15, 1993, defined "loans" to include all rights or security interests in collateral documents and provided that "collateral document" included deeds of trust. The affidavit and assignment of claim that consummated the transaction was executed on January 11, 1994.

The FDIC sold the property to Landmark Enterprises ("Landmark") on February 4, 1994. The FDIC asserts that it had executed

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

a non-judicial foreclosure on the relevant deeds of trust on October 13, 1992; thus, at the time of saleSSand at the time of the loan sale agreement with CSPSSFDIC owned the subject property, and the deeds of trust partially securing the "Sams loans" had been extinguished. CSP claims that the debtor's interest in the property was not affected by the October 1992 foreclosure sale, which did not become final until entry of the Amended Final Judgment dated January 25, 1994. Thus, according to CSP, the deeds of trust had already been assigned to it before the foreclosure became official.

CSP sued on April 24, 1998, to recover the value of the property sold to Landmark. On July 9, 1998, CSP served a request for admissions that the FDIC failed to answer within the prescribed time; the FDIC did, however, file an answer to the complaint on August 5, 1998, which essentially denied the request for admissions. FDIC asserts that it never received the request and did not know that it had been filed until it received the motion for summary judgment on August 17, 1998, with the request for admissions attached. On receiving the motion, the FDIC immediately responded to the request for admissions.

The district court denied CSP's motion for summary judgment and granted FDIC's on alternate grounds that (1) the statute of limitations had run on CSP's claim, invalidating it; and (2) even had the statute not run, CSP could not prevail, because it could not show that it had contracted to purchase the relevant deeds of trust.

II.

The district court held that CSP's action is governed by the three-year statute of limitation

provided in MISS. CODE ANN. § 15-1-49, the catch-all provision, and CSP does not challenge this finding. The court also found that the FDIC's sale of the properties occurred on February 4, 1994, more than three years before CSP sued. The facts facially indicate, then, that the statute of limitations bars the action.

CSP attempts to avoid this result by claiming that the statute of limitations should not run on an action of this type, in which two claimants to the same interest exist, until the latter claimant has received notice of the disposition of the interest by the former. This finding is not supported by the Mississippi caselaw explicating statutes of limitations generally. Those cases have established that, in Mississippi, the statute runs from the time of the injury, not from its discovery.[1] That date came no later than February 4, 1994, when the sale was completed.

In Mississippi, moreover, recordation of an interest in property provides all future would-be contestants with constructive notice of the interest. *Bedford v. Kravis*, 622 So. 2d 291, 295 (Miss. 1993); *Metropolitan Nat'l Bank v. United States*, 901 F.2d 1297, 1303-04 (5th Cir. 1990). Long before the FDIC sold the properties to Landmark, it asserted an interest in them. The FDIC recorded, in Lowndes County, Mississippi, a "Substituted Trustee's Deed" on October 15, 1992, and a "Corrected Substituted Trustee's Deed" on July 9, 1993,

---

[1] *See Wilson v. Retail Credit Co.,* 325 F. Supp. 460, 465 (S.D. Miss. 1971); *Central Trust Co. v. Meridian Light & Ry.*, 63 So. 575, 576 (Miss. 1913) (noting that "the time limited is to be computed from the day upon which the plaintiff might have commenced an action for the recovery of his demand").

thus establishing notice to the world, including CSP, that the FDIC asserted ownership over the propertiesSSthat other ownership of them or mortgages on them had been extinguished. CSP therefore was chargeable with constructive notice of the FDIC's interest and ownership claim as of at least the latter of those dates.[2]

CSP thus faces the challenge of showing that, despite the basic rules in Mississippi determining when statutes of limitations run, this case is one in which the statute should not begin to run until a party in its position has received *actual* notice of the other claimant's actions. To achieve this end, CSP cites two precedents; neither helps.

In *Jordan v. Warren*, 602 So. 2d 809 (Miss. 1992), the court required actual notice to be provided to *co-tenants* before ouster and adverse possession by one of the tenants could occur. Because co-tenancy creates a relationship tantamount in some ways to partnership, and because CSP does not here claim either to have been co-tenant with the FDIC or to have been "ousted" by it (in the real, co-tenancy-related meaning of the term, rather than in the irrelevant manner in which CSP employs it), the precedent does not pertain.

In *Estate of Petrick*, 635 So. 2d 1389 (Miss. 1994), meanwhile, the executrix was required to provide actual notice to the reasonably identifiable creditors of the estate *pursuant to a statutory requirement that such actual notice be provided* by executors to creditors. CSP provides no similar statutory requirement in cases such as the instant one. The only relevance of *Petrick*, then, is to suggest that actual notice requirements have arisen in Mississippi only when required by statute, and so do not arise here.

Furthermore, even were actual notice required here (and we do not conclude that it is), it would have been provided more than three years before suit was filed. As the FDIC notes, CSP has admitted to having access to the FDIC's files concerning this property, which included a January 4, 1993, bankruptcy court order abandoning the relevant property to the FDIC as creditor. CSP also was privy to a March 1995 order that confirmed the FDIC's ownership. Surely this constituted actual notice of the FDIC's use of the property as its own.

AFFIRMED.

---

[2] CSP contends that this conveyance to the FDIC, and thus the extinguishment of the deed of trust, were invalid and were rendered valid only by later judicial order. To make this argument, CSP asserts that "a deed of trust in Mississippi containing a defective or faulty description is void."

This is inaccurate. The very cases cited for this proposition distinctly enunciate that "a deed will not be held void for uncertainty of description if, by any reasonable construction, it can be upheld." *Neil v. Jones,* 497 So. 2d 797, 800 (Miss. 1986); *see also Stevenson v. Stevenson*, 579 So. 2d 550, 553 (Miss. 1991); *Seal v. Anderson*, 108 So. 2d 864, 865-66 (Miss. 1959). Thus, CSP needed to plead and prove not only that the initial property description in the recordation was faulty, but also that it was so flawed as to defeat constructive notice. CSP did not attempt this feat.