# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01661-COA

**RUSH FOUNDATION HOSPITAL, MEDICAL FOUNDATION, INC., AND RUSH MEDICAL GROUP**

APPELLANTS

**v.**

**STEPHANIE CARLISLE, AS THE ADMINISTRATOR OF THE ESTATE OF CHRISTOPHER HAYDEN POWELL**

APPELLEE

DATE OF JUDGMENT:                10/20/2016
TRIAL JUDGE:                          HON. LAWRENCE PRIMEAUX
COURT FROM WHICH APPEALED:   LAUDERDALE COUNTY CHANCERY
                                         COURT
ATTORNEYS FOR APPELLANTS:    J. RICHARD BARRY
                                         JAMES CORNELIUS GRIFFIN
ATTORNEY FOR APPELLEE:         JOHN E. HOWELL
NATURE OF THE CASE:              CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                        AFFIRMED - 03/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Christopher Hayden Powell died intestate, and was survived by his father, mother, and sister. Stephanie Carlisle served as administrator and filed a final accounting and motion to close Powell's estate ("Estate"). Rush Foundation Hospital, Medical Foundation, Inc., and Rush Medical Group (collectively "Rush") opposed the motion. The chancellor held a hearing and later entered a judgment denying Rush's claim as barred by the four-year statute of limitations, Mississippi Code Annotated section 15-1-25 (Rev. 2012). Rush sought

interlocutory review, which was denied. The chancellor entered a judgment closing the Estate, from which Rush appeals.

## BACKGROUND

¶2.	Powell died intestate on May 5, 2010. His father, mother, and sister survived him. On November 10, 2011, the Lauderdale County Chancery Court issued letters of administration to Powell's mother, Carlisle, to serve as administrator of Powell's estate. Notice to creditors was published on November 15, 22, and 29, 2011, in the Meridian Star newspaper, which is circulated throughout Lauderdale County. On December 27, 2011, three Rush entities probated a claim against the Estate for $10,413.39. Those entities and the amounts of their respective claims are: Rush Medical Group, $810; Medical Foundation, Inc., $450; and Rush Foundation Hospital, $9,153.39.

¶3.	On March 21, 2016, Carlisle filed her "Final Account and Motion to Close Estate." In her filing, Carlisle claimed that Powell died leaving no certain personal property and no real property in Lauderdale County, and that, at his time of death, he had no assets. Carlisle also averred that Rush's claim was barred by the statute of limitations. On May 26, 2016, Rush filed a response opposing Carlisle's motion. In its response, Rush asserted its claim was not barred, and that Carlisle had yet to file an inventory[1] or pleading to ascertain whether the Estate was solvent.[2] Rush additionally noted the court had approved a wrongful-death

---

[1] Mississippi Code Annotated section 91-7-93 (Rev. 2013) requires an executor or administrator to file an inventory within ninety days of the grant of letters testamentary.

[2] Mississippi Code Annotated section 91-7-261 (Rev. 2013) requires an executor or administrator to ascertain whether an estate is insolvent or solvent. If both the decedent's real and personal estates are insufficient to pay his debts, the executor or administrator must

settlement in the amount of $100,000. On June 22, 2016, the chancery court heard arguments on Rush's response to Carlisle's "Final Account and Motion to Close Estate." On June 23, 2016, the chancellor issued an opinion and judgment denying Rush's claim, finding it time-barred under section 15-1-25. The chancellor's judgment did not address the dispute over whether the Estate was solvent, nor did it address Carlisle's statutory requirement as an administrator to file an inventory. Rush sought interlocutory review on July 14, 2016, which the Mississippi Supreme Court denied on October 12, 2016. On October 20, 2016, the chancellor entered a "Judgment Closing Estate and Discharging Administratrix."

¶4. Rush filed a notice of appeal from the chancellor's October 20 judgment on November 17, 2016.

## DISCUSSION

### I. Whether Rush timely appealed.

¶5. Carlisle argues this Court lacks jurisdiction because Rush filed its notice of appeal more than thirty days after the June 23, 2016 judgment denying its claim. Rush argues the June 23 judgment was not final because it did not adjudicate all the claims, rights, and liabilities of all the parties; and the order was not certified as a Mississippi Rule of Civil Procedure 54(b) final judgment. Rush states the October 20, 2016 judgment closing the Estate adjudicated all claims, rights, and liabilities, and it timely filed its notice of appeal within thirty days from this date.

¶6. "Generally, parties may only appeal from a final judgment." *Harris v. Waters*, 40 So.

"exhibit to the court a true account of all the personal estate, assets of every description, the land of the deceased, and all the debts due from the deceased[.]"

3

3d 657, 658 (¶3) (Miss. Ct. App. 2010). "A final, appealable judgment . . . adjudicates the merits of the controversy [and] settles all issues as to all the parties, and requires no further action by the lower court." *Id.* Rule 54(b) provides an exception to this rule by allowing the trial court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties." But the trial court may do so "only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment." *Id.* Absent a 54(b) certification, any judgment—regardless of how designated—is not final if it "adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties." *Id.*

¶7.     The trial judge's decision whether to certify a judgment as final under Rule 54(b) is discretionary. M.R.C.P. 54(b) advisory committee's notes. However, should he elect to certify the judgment as final under Rule 54(b), he "must do so in a definite, unmistakable manner." *Id.*

¶8.     In contending the appeal is untimely, the Estate cites *In re Estate of Philyaw*, 514 So. 2d 1232 (Miss. 1987), which held that a chancellor's decree allowing a creditor's claim against the estate begins the thirty-day period in which an administrator may appeal. *Id.* at 1236-37. However, *Estate of Philyaw* considered a judgment that resolved all disputed issues. *Id.* at 1235-36. In addition, *Estate of Philyaw* reviewed an issue from an estate filed in 1981, prior to the effective date of Mississippi Rules of Civil Procedure.[3] *Id.* at 1233, 1239.

---

[3] The Mississippi Rules of Civil Procedure became effective on January 1, 1982, for civil actions filed on or after that date. *Order Adopting the Mississippi Rules of Civil Procedure* (May 26, 1981).

¶9. We find this case more analogous to *Harris v. Waters*, 40 So. 3d 657 (Miss. Ct. App. 2010). In *Harris*, the chancellor entered a judgment following a contest to the executor's final accounting and petition to close the estate. *Id.* at 658 (¶1). In her final accounting, the executor requested that the chancellor order several pieces of property be conveyed to her. *Id.* at 659 (¶¶6-9). However, the chancellor's judgment, entered prior to the closing of the estate, failed to address the executor's request. *Id.* at (¶9). We held that the failure to address the executor's request left open the proper distribution of the property. *Id.* In addition, we found the chancellor failed to resolve an administration-expense issue and a disputed statutory-support matter. *Id.* at (¶10). For those reasons, we concluded the chancellor did not adjudicate all claims involved, and we determined that the chancellor's order was interlocutory. *Id.* at (¶11).

¶10. Similarly, the June 23, 2016 judgment denying Rush's claim did not adjudicate all claims, rights, and liabilities involved. No 54(b) certification appears in the record; thus, the judgment was interlocutory.

¶11. Carlisle's motion to close the Estate contained two distinct issues. Carlisle argued that Rush's claim was barred by the four-year statute of limitations. Next, she claimed that the decedent had no assets at the time of his death. Rush contested these assertions, noting: there had been a wrongful-death settlement; Carlisle had yet to return an inventory of the Estate, as required by Mississippi Code Annotated section 91-7-93 (Rev. 2013); and the chancellor had yet to determine whether the Estate was insolvent.

¶12. The chancellor's June 23 judgment found Rush's claim was barred by the statute of

limitations, but did not address the issue of whether the Estate was solvent, or whether Carlisle was required to file an inventory. Rush timely sought interlocutory review on July 14, 2016, which the Mississippi Supreme Court denied on October 12. On October 20, the chancellor issued a judgment closing the Estate, and Rush filed its instant appeal within thirty days from the date the judgment was entered. Under these circumstances, we find the timeliness of Rush's appeal is not at issue.

¶13.    The dissent would have us find that Rush was obliged to appeal within thirty days after the chancellor's ruling on June 23. It is true that both the Mississippi Supreme Court and this Court have exercised jurisdiction over timely appeals from orders either allowing or disallowing claims against still-open estates. *See, e.g.*, *In re Estate of Petrick*, 635 So. 2d 1389 (Miss. 1994)*; In re Estate of Ladner*, 911 So. 2d 673 (Miss. Ct. App. 2005). However, our appellate courts have not yet held that a creditor *must* file an appeal from the date a claim is denied. For us to do so now would limit the time for claimants to appeal when issues brought forth by the original pleadings remain undecided.

¶14.    In contending Rush's time for appeal has expired, the dissent cites *In re Holmes*, 188 So. 3d 1229 (Miss. Ct. App. 2015). There, a creditor filed a claim seeking payment for a series of personal checks advanced to the decedent for her nursing care. *Id.* at 1232 (¶10). The executor moved to close the estate, and asserted the decedent lacked capacity to enter a contract, and that the creditor probated its claim too late. *Id.* at (¶11). The creditor opposed both arguments. *Id.* at (¶¶12-13). After a hearing, the chancellor disallowed the claim. *Id.* at (¶¶14-15). In his judgment, the chancellor found that the creditor was unable to provide

sufficient proof the checks represented loans and that the claim was time-barred. *Id.*

¶15.    In response to the creditor's appeal, the executor argued the chancellor's judgment denying the claim was not final because the estate remained open, and there was no final order closing the estate. *Id.* at n.3 This Court rejected the executor's argument and found the appeal timely because the judgment appealed from "finally resolved the probate claim . . . lodged against [the] estate." *Id.*

¶16.    Unlike *In re Holmes*, the chancellor's judgment in this case did not directly address all disputed issues. Further, this Court did not deny the appeal in *In re Holmes*, but exercised jurisdiction over the appeal. Therefore, to rule that a claimant *must* file an appeal at this juncture would effectively deny Rush the opportunity to appeal when caselaw does not make such an obligation apparent. We will thus review the merits of Rush's appeal.

## II.    Whether the statute of limitations had run.

¶17.    Rush argues the chancellor erred in applying the four-year statute of limitations found in section 15-1-25, which states: "An action or scire facias may not be brought against any executor or administrator upon any judgment or other cause of action against his testator or intestate, except within four years after the qualification of such executor or administrator." The application of a statute of limitations is a question of law, which we review de novo. *Sarris v. Smith*, 782 So. 2d 721, 723 (¶6) (Miss. 2001).

¶18.    Rush argues section 15-1-25 is preemptive; that no action to compel payment was brought, making section 15-1-25 inapplicable; and that Carlisle's statutory duty to pay the

Estate's debts[4] entitles Rush to payment of its claims. This argument, however, is without merit. In *Rogers v. Rosenstock*, 117 Miss. 144, 77 So. 958 (1918), the Mississippi Supreme Court considered the application of section 15-1-25 (then Section 3105, Code 1906), stating, "[S]ection 3105 is clear and unambiguous, and under the strict language of this section[,] the owner of a probated claim must insist upon satisfaction or bring his action against the executor or administrator" within the time provided by statute.[5] *Rogers*, 117 Miss. at 149, 77 So. at 959. As the *Rogers* court explained, "[the statute] declares that when the remedy is barred[,] the right also is barred." *Id.* at 151, 77 So. at 960. As Professor Robert Weems succinctly explained:

> One might conclude that if a creditor validly probates his or her claim, the creditor would not have to do anything else to protect it, but this is not always the case. The administrator may, through deliberation or procrastination, fail to pay the claim. If the administrator does not pay it, the creditor may have to take judicial action to compel payment. Administrators may not be sued for 90 days after taking office, and there is a four-year statute of limitations with regard to the action against administrators to recover claims against their decedent. [Miss. Code Ann. §§ 91-7-239 (Rev. 2013); 15-1-25]. Consequently, actions to compel payment of such claims must be brought within four years and 90 days of the qualification of the administrator, even though the claim may have been duly probated.

Robert A. Weems, *Wills and Administration of Estates in Mississippi*, § 2.31 (3d ed. 2003).

---

[4] Mississippi Code Annotated section 91-7-155 (Rev. 2013) provides, "[i]t shall be the duty of an executor or administrator to speedily pay the debts due by the estate out of the assets, if the estate be solvent; but he shall not pay any claim against the deceased unless the same has been probated, allowed, and registered."

[5] At the time *Rogers* was handed down, the statutory time period in which to sue an executor or administrator was four years and six months from the date the letters testamentary or letters of administration were issued. The current statute modified this time period to four years.

¶19. Here, Carlisle was issued letters of administration on November 10, 2011, and the four-year statute of limitations began to run ninety days later, i.e., on February 8, 2012. Miss. Code Ann. § 91-7-239.[6] Therefore, section 15-1-25 required that Rush insist upon satisfaction of its claims or bring an action against Carlisle before February 8, 2016. Rush did not do so until May 26, 2016, approximately three months and eighteen days after the statute of limitations ran. This time period clearly exceeds that of section 15-1-25, and this suit is time-barred.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., CARLTON, WESTBROOKS AND TINDELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., DISSENTS WITH SEPARATE OPINION, JOINED BY GRIFFIS, P.J., AND FAIR, J.**

**WILSON, J., DISSENTING:**

¶21. We do not have jurisdiction to address this appeal because Rush did not file a timely notice of appeal. The chancery court entered a judgment on June 23, 2016, denying Rush's probated claim. At that point, Rush's claim was denied, and its involvement in the estate proceeding was concluded. Under the precedents of the Mississippi Supreme Court and this Court, Rush then had thirty days to appeal. Rush's November 17, 2016 notice of appeal was untimely.

¶22. In *In re Estate of Philyaw*, 514 So. 2d 1232 (Miss. 1987), the chancery court entered a judgment allowing a creditor's claim against the estate, and no appeal was taken from that

---

[6] Under section 91-7-239, a suit cannot be filed against an executor or administrator until after ninety days following the issuance of the letters of administration.

judgment. *Id.* at 1234. The estate remained open for twenty-one months after entry of the judgment allowing the claim. During that period, additional claims and issues were litigated until the chancery court entered a judgment approving and confirming the final accounting and closing the estate. *Id.* at 1234-36. One of the deceased's children then attempted to appeal the judgment entered twenty-one months earlier that had allowed the creditor's claim against the estate. *Id.* at 1236. However, the Supreme Court held that it was "without jurisdiction" to hear an appeal from the judgment allowing the creditor's claim because the time to appeal it had "long since expired." *Id.* at 1237. The Court's opinion established a clear rule that the time to appeal a judgment allowing a creditor's "contested claim runs from the date of such decree"—*not* "from the date of the decree finally closing the estate." *Id.* at 1236.

¶23. In *In re Estate of Holmes*, 188 So. 3d 1229, 1232 n.3 (Miss. Ct. App. 2015), this Court applied the same logic to a creditor's appeal from a judgment denying a probated claim. There, the executor argued that the judgment denying the claim was not a final, appealable judgment because the estate remained open, and there was no final order closing the estate. *Id.* We rejected the executor's argument, and held that the judgment was final and appealable because it "finally resolved the probate claim . . . lodged against [the] estate." *Id.* We further noted that "both the Mississippi Supreme Court and this [C]ourt have exercised appellate jurisdiction over timely appeals from orders either allowing or disallowing claims against still-open estates." *Id.* (citing *In re Estate of Petrick*, 635 So. 2d 1389 (Miss. 1994); *In re Estate of Ladner*, 911 So. 2d 673 (Miss. Ct. App. 2005)).

10

¶24. Thus, *Holmes* clearly holds that a judgment denying all of a creditor's probated claims is a final, appealable judgment. *Id.* Accordingly, *Holmes* also "sort of obliquely says that the time to appeal is within thirty days of the order or judgment denying the claim," even if "it does not come right out and say so." Hon. Larry Primeaux, *When to Appeal from Denial of a Probated Claim*, *The Better Chancery Practice Blog* (Sept. 28, 2015), https://betterchancery.com/2015/09/28/when-to-appeal-from-denial-of-a-probated-claim/. As Chancellor Primeaux explains, *Holmes*'s holding follows logically from the Supreme Court's decision in *Philyaw*, which "directly answers the question" of when to appeal. *Id.* "*Philyaw* deals with the time for an administrator or executor to appeal from a ruling adverse to the estate, but there is no logical reason why the same rationale should not apply to a creditor appealing from an adverse ruling. It's that goose-and-gander thing." *Id.*

¶25. Applying these precedents, it is clear that Rush should have filed a notice of appeal within thirty days of the June 23, 2016 judgment denying its probated claim. M.R.A.P. 4(a). That judgment "finally resolved the probate claim" that Rush "lodged against [the] estate." *Holmes*, 188 So. 3d at 1232 n.3. Therefore, the time to appeal ran from the entry of that judgment. *Philyaw*, 514 So. 2d at 1236. The *only* subsequent activity in the chancery court was the entry, about four months later, of a two-page judgment closing the estate, discharging the administrator, and waiving a final accounting. *Those issues had nothing to do with Rush or its probated claim*. The judgment denying Rush's claim was *final* whether the estate was "solvent" or "insolvent" and regardless of any subsequent "inventory." *Ante* at (¶¶11-16). The majority's reasoning on this point is in direct conflict with *Philyaw*, which made clear

11

that finality for purposes of appeal does ***not*** require a "decree finally closing the estate." *Philyaw*, 514 So. 2d at 1236. By the time Rush filed a notice of appeal—about five months after the entry of the judgment denying its probated claim—the time to appeal had "long since expired." *Id.* at 1237. Therefore, this Court is "without jurisdiction" to consider Rush's appeal. *Id.*

¶26. *Harris v. Waters*, 40 So. 3d 657 (Miss. Ct. App. 2010), which the majority cites, is simply inapposite. In *Harris*, which we described as "an unusual set of facts," the will left the executor/widow "multiple specific legacies," including cattle, farm equipment, home furnishings, and appliances, and the executor/widow asked the court to grant her (1) authority to convey all of this property to herself, (2) a widow's allowance, and (3) administration expenses. *Id.* at 659 (¶¶6, 10). The chancellor partially denied her request to convey the cattle. However, the chancellor did not address her requests to convey the farm equipment, home furnishings, or appliances. Nor did the chancellor resolve her requests for a widow's allowance and expenses. *Id.* at (¶¶7-10). Thus, although the claimant/appellant had advanced several different claims and requests for relief in the chancery court, the chancellor had adjudicated only one of them—the request to convey the cattle—while leaving all of the others unresolved. Because the chancellor's ruling did not resolve several disputed issues related to the appellant's requests for relief, this Court held that the chancellor's ruling was neither final nor appealable. *Id.* at 659-60 (¶12) (distinguishing *Philyaw*, *supra*). In stark contrast, the judgment denying Rush's probated claim finally resolved *all* of Rush's claims and concluded Rush's involvement in the estate proceeding.

12

¶27.    The majority also seems to say that Rush *could have* appealed from the June 23, 2016 judgment denying its claim but was not *required* to do so. *See ante* at (¶¶13-16). That simply is not how our appellate jurisdiction works. If a judgment is final, the notice of appeal *must* be filed within thirty days (unless the time for filing is tolled). M.R.A.P. 4. If the judgment is not final, it *cannot* be appealed. A party does not get to decide *when* to appeal the judgment. The designated time for appealing the judgment is mandatory and "jurisdictional." *Philyaw*, 514 So. 2d at 1236. This is exactly the point of *Philyaw*'s holding that an executor or administrator *must* appeal within the time allowed following a judgment allowing a contested claim. *Id.* The majority utterly fails to explain why we would have one rule for executors/administrators but a different rule for creditors.

¶28.    Finally, the majority seems to imply that we have jurisdiction *in this particular appeal* but only because prior precedent did not make Rush's obligation to appeal "apparent." *Ante* at (¶16). This is no basis for appellate jurisdiction. To begin with, because there is no material difference between this case and *Philyaw*, the obligation was already "apparent." Moreover, in *Philyaw*, the Supreme Court dismissed the appeal for lack of jurisdiction even though "the specific jurisdictional question . . . *ha[d] never been addressed by [the Supreme] Court*," and courts in other states were divided on the issue. *Philyaw*, 514 So. 2d at 1236 (emphasis added). In short, this case does not involve any issue of first impression; and even if it did, there is no such thing as issue-of-first-impression appellate jurisdiction.

¶29.    My disagreement with the majority may seem academic. The majority affirms the judgment denying the probated claim, while I would dismiss the appeal, which would also

leave the judgment in place. However, "it is essential that the point at which a judgment is final be crystal clear because appellate rights depend upon it. The opportunity to appeal could be lost by a mistaken belief that the judgment is not final and a consequent failure to file timely a notice of appeal." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). Our Supreme Court's decision in *Philyaw* and our decision in *Holmes* provide at least some degree of clarity as to when to appeal a judgment allowing or denying a probated claim. However, the majority's opinion undermines this clarity. It will require lawyers to guess as to whether such a judgment is final or non-final based on the pendency of *wholly unrelated* issues within the estate proceeding as a whole. I respectfully dissent.

**GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.**