# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00606-COA

**GEORGE RIORDAN JR.**                                       **APPELLANT**

**v.**

**ESTATE OF FRED HAGUEWOOD, DECEASED**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2022 |
| TRIAL JUDGE: | HON. CHARLES E. SMITH |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN PAUL WILSON |
| ATTORNEY FOR APPELLEE: | ROBERT WILLIAM ARLEDGE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 12/05/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. George Riordan Jr. appeals the Lauderdale County Chancery Court's denial of his motion for relief from a judgment under Mississippi Rule of Civil Procedure Rule 60(b)(6) and the dismissal of his complaint to impose a constructive trust. Riordan requested the reopening of Fred Haguewood's Estate in order to file a claim against the Estate or litigate his complaint to impose a constructive trust. Riordan contends that the Estate's executor, Roy Boutwell,[1] failed to provide him with the requisite notice for probating his potential claim against the Estate as a creditor.

---

[1] In this opinion, references to Boutwell are in his position as executor and not individually, unless otherwise noted.

¶2. On appeal, Riordan argues that the chancery court erred in determining Boutwell made reasonably diligent efforts to notify him as a creditor and in finding that the publication of the notice to creditors was sufficient to give actual notice to Riordan. Finding no error, we affirm.

**STATEMENT OF FACTS**

¶3. In November 2019, Fred Haguewood passed away testate, having executed a valid will in 2009 that named his nephew Boutwell as executor. (Riordan was named executor if Boutwell was unable to serve.) Except for a one-acre lot devised to his "wife to be," Haguewood's will devised the remainder of his Estate to Boutwell. This remainder consisted of an 11.5-acre piece of property and residence, 1630 Skyline Road, located outside of Meridian, Mississippi. Haguewood and his step-grandson, Riordan, had been living there for several years; however, the property was titled only in Haguewood's name.

¶4. In 2015, before Haguewood's death, he and Riordan started a business buying and selling used cars, among other things. The terms and conditions of Haguewood and Riordan's joint partnership were, as Riordan's counsel aptly described them, "murky under the record." No written documentation of the business's formation or incorporation existed—only an oral agreement. Riordan's counsel described it as "a joint venture between family members." After Haguewood's death, Riordan continued operating the business for about a year before it closed.

¶5. Central to this appeal, in March 2015, Haguewood and Riordan opened a $50,000 revolving line of credit with Citizens National Bank (Citizens Bank) in Meridian to fund

2

start-up costs. The loan was secured by a deed of trust filed in Lauderdale County, placing a lien on Haguewood's Skyline Road property. Haguewood used the funds from the loan to purchase vehicles for the business. Haguewood and Riordan were jointly and severally liable for the amount due on the line of credit. Riordan did not offer any collateral for the line of credit but claimed he alone paid on the loan ($188 interest-only monthly payments as they became due). At the time of the hearing on Riordan's motion, the loan's payoff amount was still around $50,000. Riordan testified that he paid $14,000 "of his own money into the business" in addition to working for the business. After the business closed, Riordan complained that he was still at least partially responsible for the balance on the loan.

¶6. Boutwell contends that Riordan knew the Estate had been opened, whether by constructive or actual knowledge, but Riordan failed to file a creditor's claim. Boutwell testified that he never went through Haguewood's personal records at the Skyline Road residence to see if Haguewood had any creditors, but Boutwell knew "there was a loan"—Haguewood had told Boutwell about it before he died. However, it is unclear from the record how much more Boutwell knew about the loan or the joint business venture with Riordan. The Estate's counsel claimed that Riordan should have come forward to make a claim because he lived at Haguewood's residence where the records would have been.

¶7. Riordan, however, claimed that he did not know about the opening of Haguewood's Estate until he received a letter from Boutwell dated December 14, 2021, advising Riordan to move out of the Skyline Road property because it was devised to Boutwell. Riordan received the letter about three weeks before the Estate closed. Riordan testified that

3

Haguewood's "last wishes" were for the Skyline Road property to go to him (Riordan), and Haguewood was in the midst of "signing the paperwork" to that effect with an attorney[2] when Haguewood died.

## PROCEDURAL HISTORY

¶8.    In May 2021, Boutwell filed a petition to probate Haguewood's will in the Lauderdale County Chancery Court. Notice to creditors was published in *The Meridian Star* newspaper on May 18, May 25, and June 1, 2021. The chancery court entered a judgment admitting the will to probate and issuing letters of administration on September 27, 2021. On the same date, Boutwell signed an "Affidavit of Legal Representation" affirming that he had made a reasonable and diligent effort to identify and locate all claims against the Estate. No claims were probated; so on January 6, 2022, Boutwell filed a motion to close the Estate, which was granted the same day. Due to an error in a legal description, the chancery court entered an amended judgment on January 25, 2022.

¶9.    Allegedly not knowing the Estate was closed, Riordan filed a complaint to impose a constructive trust against the Estate's Skyline Road property on February 4, 2022. Two weeks later, he moved under Rule 60(b)(6) for relief from the judgment closing the Estate, contending Boutwell should have provided notice to Riordan as a creditor of the Estate. Further, Riordan claimed that Boutwell engaged in either intentional or negligent misrepresentation by not identifying Riordan as a creditor before closing the Estate. Riordan also alleged in the motion that Haguewood contacted an attorney to draft a will that would

---

[2] This attorney died after Haguewood but before the Estate closed.

4

"effectuate an unwritten agreement" between Haguewood and Riordan, where Haguewood would devise the Skyline property to Riordan "based upon work performed" by Riordan. Riordan requested the Estate be reopened so his motion for a constructive trust could be heard. The Estate responded that it had no duty to notify Riordan, as he was neither a beneficiary nor a creditor of the Estate; thus, Riordan was not entitled to any relief. Further, the Estate contended that any claim to real estate now owned by Boutwell should be addressed in a separate lawsuit.

¶10. On June 1, 2022, the chancery court held a hearing on Riordan's Rule 60(b) motion for relief from the judgment. After hearing arguments and testimony, the chancellor made a ruling from the bench. He found Haguewood's Estate was properly administered and closed, with no reason to reopen it. Further, the chancellor opined that a constructive trust, even if granted, would be imposed against the Skyline Road property and not the Estate. The chancellor found that Riordan knew there was an estate before it closed, and he could have filed an objection to its closing "inside the estate," arguing he was a creditor. Additionally, the chancellor found that the notice to creditors properly ran in the local newspaper, and Riordan could have filed a claim "just like anyone else." However, the chancellor found Riordan was not a creditor and would not have a claim because there was no evidence to show the Estate owed him any money. The chancellor explained that Riordan's only expenditures for the business were the monies borrowed to buy used vehicles, which would be recouped when the vehicles were sold. The chancellor found Citizens Bank was a "secured" creditor; thus, the bank did not have to probate a claim

5

against the Estate because of the lien on the Skyline Road property. The chancellor and Riordan's counsel agreed that ultimate payment of the bank's loan would be a matter between Boutwell and Riordan "as to who owe[d] what." Accordingly, the chancery court entered a judgment denying Riordan's motion for relief and dismissing his complaint to impose a constructive trust without prejudice. Thus, if Riordan decided to file a civil action against Boutwell, as owner of the Skyline property, he could do so. From this judgment, Riordan appealed.

## STANDARD OF REVIEW

¶11.     Appellate courts apply an abuse-of-discretion standard when reviewing a chancellor's denial of a motion under Rule 60(b). *Howard v. Gunnell*, 63 So. 3d 589, 598 (¶19) (Miss. Ct. App. 2011) (citing *Lowrey v. Lowrey*, 919 So. 2d 1112, 1117 (¶16) (Miss. Ct. App. 2005)). "We will not disturb the findings of a chancellor unless they are manifestly wrong, clearly erroneous, or emanate from the application of an improper legal standard." *Young v. O'Beirne*, 147 So. 3d 877, 884 (¶20) (Miss. Ct. App. 2014). "Courts should deny motions made pursuant to Rule 60(b) if they are merely an attempt to relitigate the case." *Howard*, 63 So. 3d at 598 (¶19) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)). "[F]or questions of law, the standard of review is de novo." *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000).

## ANALYSIS

¶12.     Riordan argues that the chancery court erred in finding Boutwell made reasonably diligent efforts to notify creditors. Further, he contends the chancery court erred as a matter

of law in finding the publication of the notice to creditors excused Boutwell's duty to send actual notice to Riordan. Therefore, Riordan claims the chancery court's judgment denying relief under Rule 60 should be reversed and the matter remanded in order for the chancery court to reopen the Estate and hear his claim.

## I. Whether Riordan had a valid claim against the Estate.

¶13. Riordan argues that he is a creditor and has a claim against the Estate for the Skyline Road property, either as a "liquidated claim or a constructive trust." Therefore, Riordan contends that Boutwell owed him a duty to provide actual notice as a creditor but failed to do so, warranting reversal of the chancery court's judgment.

¶14. Mississippi statutory law provides that an executor or administrator has a duty to make "reasonably diligent efforts to identify persons having claims against the estate." Miss. Code Ann. § 91-7-145(1) (Rev. 2021). Once potential creditors are identified, the representative must notify them to "probate and register their claim within ninety days after the first notice of creditors publication." *In re Est. of Lingle*, 822 So. 2d 320, 322 (¶11) (Miss. Ct. App. 2002) (citing Miss. Code Ann. § 91-7-145). "A prerequisite to claiming creditor's rights is having a valid claim." *Id.* at (¶12). "An adequate claim must give notice that it existed against the estate, must distinguish the claim with reasonable certainty from all other similar claims and must give information concerning the nature and amount of the demand so that it would enable the representative of the estate to act intelligently either in providing for its payment or in rejecting it." *Id.* at 323 (¶12) (citing *Cent. Optical Merch. Co.*, 249 Miss. 61, 160 So. 2d 673, 678 (1964)). "The term 'claim' in statutes relating to

7

claims against estates includes not only debts already due, but unmatured debts. It applies only to specific money demands due or to become due and not to inchoate and contingent claims." *Reedy v. Alexander*, 202 Miss. 80, 89, 30 So. 2d 599, 601 (1947) (citation omitted).

¶15. Riordan bases his argument that he is a creditor of the Estate on the fact he is a co-borrower with Haguewood on the Citizens Bank line of credit for their joint business. Riordan's counsel admitted at the hearing that Citizens Bank was a creditor of the Estate but maintained that Riordan had a claim "separately" due to "his expenditures into th[e] joint venture." We disagree.

¶16. Riordan never specified the "nature and amount of the demand"—he merely requested the Estate be reopened so he could litigate his unspecified claim. Both parties recognized Riordan and Haguewood's business venture was vague and informal. No written documents or agreements detailed their duties and responsibilities. The only financial details Riordan presented were that he co-signed for the Citizens Bank loan, paid $188 per month in interest only on the loan for an unspecified period of time, and put $14,000 of his own money into the business. The balance of the loan at the time of the hearing was approximately $50,000. Riordan never specified the amount of his claim against the Estate. Instead, Riordan places the burden on Boutwell that he should have notified Riordan. Riordan contends that Boutwell knew of the joint business venture and the joint liability on the Citizens Bank loan; so Riordan allegedly should have received actual notice from Boutwell. However, co-signing on the loan made Haguewood and Riordan co-creditors to Citizens Bank, and they were jointly and severally liable for the amount borrowed; it did not

8

make Riordan a creditor of Haguewood.

¶17. Further, the only person or entity the Estate owed money to was Citizens Bank. No written documentation showed that Haguewood agreed to pay Riordan for any work he performed, as Riordan alleged. Riordan never claimed he was entitled to payment for work performed at the outset. Any agreement by Haguewood to convey to Riordan the property in exchange for his work on the joint venture would have to have been in writing to be enforceable under the statute of frauds. *See* Miss. Code Ann. §15-3-1(c) (Rev. 2019) (writing requirement for contracts for the sale of land). Even if Boutwell had reviewed all the joint-venture documentation at the Skyline Road property, none of it would have alerted him to Riordan's claim to be a creditor of the Estate.

¶18. Moreover, Riordan had to have known about Haguewood's Estate at least several weeks before it was closed on January 6, 2022, as Riordan received the December 14, 2021, letter from Boutwell requesting Riordan leave the Skyline Road property because it had been devised to Boutwell. As the chancellor suggested, at that point Riordan could have filed an objection to the future closing of the Estate before it actually closed, instead of waiting to file a Rule 60(b)(6) motion for relief from a judgment over a month after the Estate was closed.

¶19. The burden for relief from judgment under Rule 60 is high. "Relief under Rule 60(b)(6) 'is reserved for exceptional and compelling circumstances'" in light of the "desire to achieve finality in litigation." *Regan v. S. Cent. Reg'l Med. Ctr.*, 47 So. 3d 651, 655 (¶16) (Miss. 2010) (quoting *Moore v. Jacobs*, 752 So. 2d 1013, 1017 (¶17) (Miss. 1999)).

9

Motions made under Rule 60 to relitigate a case will be denied. *Stringfellow*, 451 So. 2d at 221. "A party is not entitled to relief merely because he/she is unhappy with the judgment." *Howard*, 63 So. 3d at 598 (¶21) (quoting *Est. of Davis v. O'Neill*, 42 So. 3d 520, 524 (¶16) (Miss. 2010)). The chancellor did not abuse his discretion in denying Riordan's Rule 60 motion.

¶20. Because Riordan did not have a valid claim against the Estate, he could not be a creditor of the Estate. It follows that Boutwell had no duty to provide Riordan actual notice as a creditor and that reasonably diligent efforts would not have revealed such a claim. Riordan's claim is inadequate.

## II. Whether the publication of notice to creditors "excused" actual notice.

¶21. Riordan argues that the chancellor erred as a matter of law in finding the publication of the notice to creditors "excused" Boutwell's duty to send actual notice to Riordan.

¶22. First, the chancellor made no such finding, and Riordan did not specify what he was referring in his brief. The chancellor did comment at the hearing, after denying the reopening of the Estate, that "if Riordan wanted to file a claim, he could have . . . just like anyone else. That's what the publication in the newspaper is for." The chancellor then discussed Riordan possibly proceeding against Boutwell individually, as the owner of the Skyline property, and not the Estate, in order to impose a constructive trust.

¶23. We do not interpret the chancellor's comment to mean Boutwell did not have to first make "a reasonably diligent effort[] to identify persons having claims against the estate" and second (if a claim against the estate is identified), notify the claimant to probate his claim

10

within the ninety-day period after the first notice-to-creditors publication. *See In re Est. of Lingle*, 822 So. 2d at 322 (¶11). If Riordan had been identified as a person having a claim against the Estate, then Boutwell would have had a duty to provide actual notification to him. However, Riordan was not identified as a claimant, so Boutwell had no such duty.

¶24. Riordan cites *In re Estate of Petrick*, 635 So. 2d 1389 (Miss. 1994), in support of his argument. There, the Mississippi Supreme Court found that "a 'reasonably ascertainable creditor' is one who is discoverable through 'reasonably diligent efforts.'" *Id.* at 1395. The issue was what constituted "reasonably diligent efforts" by an administratrix to identify such creditors under section 91-7-145. *Id.* at 1393. The Court stated, "[I]f the creditor could have been ascertained through reasonably diligent efforts, mere publication in the newspaper in the county, absent notice by mail, does not comply with the mandates of the statute." *Id.* at 1392. The Mississippi Supreme Court explained the purpose of the notice of publication to creditors as follows:

> The statute does not specifically allow for notice by publication as a **substitute** for actual notice by mail; rather, notice by publication is a requirement **in addition** to providing creditors notice by mail. It stands to reason that the notice by publication requirement is to further ensure that those creditors who were served by mail are reminded of the time limit to file claims, *as well as to give constructive notice to creditors who could not be ascertained through reasonably diligent efforts*.

*Id.* at 1393 (emphasis added).

¶25. In *Petrick*, the supreme court agreed with the chancellor that the administratrix did not exercise "reasonably diligent efforts" to ascertain the claim of a neurosurgery clinic. *Id.* at 1395. Surgery was performed by one of the clinic's physicians who was on call at the

11

hospital where the decedent died about one week later. *Id.* at 1391. The clinic filed an untimely "Probate of Claim," which the chancellor ultimately allowed as a valid claim against the estate. *Id.* at 1390-91. The administratrix appealed this ruling. *Id.* at 1391. The record indicated that the administratrix knew the decedent had been treated at the hospital and died there. *Id.* at 1395. She also had sent notice to the hospital and another medical group for a related claim "but failed to give notice to the treating physician" or his neurosurgery clinic. *Id.* Further, the administratrix testified that she had "handed over her statutorily mandated responsibilities to her lawyers" and had "not personally exercise[d] any effort to discover persons having claims against the estate." *Id.* The supreme court found the clinic was a reasonably ascertainable creditor because the clinic's office manager had sent invoices to the decedent and personally contacted the administratrix about an outstanding bill. *Id.* Because the clinic was a reasonably ascertainable creditor, it was entitled to actual notice. *Id.*

¶26. In our case, publication was not a "substitution" for actual notice to creditors. Riordan was never a creditor, or a "reasonably ascertainable creditor"; so Boutwell never had a duty to notify him. The chancellor's comment reiterated exactly what *Petrick* states: the publication requirement's purpose is "to give constructive notice to creditors who could not be ascertained through reasonably diligent efforts." *Id.* at 1393.

## CONCLUSION

¶27. The chancery court did not err in denying Riordan's Rule 60 motion for relief from the judgment and dismissing Riordan's complaint to impose a constructive trust without

prejudice. Riordan did not establish a claim against the Estate and was not a creditor or reasonably ascertainable creditor of the Estate. Thus, Boutwell had no duty to provide Riordan actual notice as a creditor under section 91-7-145. Accordingly, we affirm the chancery court's judgment.

¶28. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**