HAWKINS, Presiding Justice,
for the Court:
Darryl Braxton has appealed from an adverse decree of the chancery court of Issaquena County in favor of Jeryl T. Johnson. The issues we address on this appeal are: (1) the time for appeal from an order allowing a contested claim against an estate; (2) whether Mrs. Gladys Marie Brax-ton, and after her death her estate, were deprived of an opportunity to contest in court the validity of an alleged indebtedness; and (3) to what extent should attorney’s fees be allowed against an estate when a portion of the legal services were for an individual creditor of the estate. We find merit in Braxton’s last two issues, and affirm in part, and reverse in part.
FACTS
Jeff Oren Philyaw, a resident of Issaque-na County, died testate at the age of 83 on April 4, 1981. His Will dated November 28, 1977, devised his entire estate to Mrs. Gladys Marie Braxton and her son Darryl Levaughn Braxton, or the survivor. Mrs. Braxton was designated executrix.
Mrs. Braxton, appointed executrix by decree of the chancery court of Issaquena County, assumed her duties as such, and published notice to creditors in the weekly newspaper of Sharkey County (there being no newspaper published in Issaquena County).
The funeral home filed a claim of $1,005.00 for probate. Also, on July 11, 1981, Jeryl T. Johnson filed a claim of $37,371.90 for probate, alleging that Johnson, as accommodation endorser for Phi-lyaw, signed a promissory note dated December 16, 1969, in the principal sum of *1234 $20,000, payable to the Merchants National Bank of Vicksburg. The claim further alleged the note bore seven percent (7%) interest and was due one year from date, that Johnson on January 21, 1971, had paid the bank the principal and interest due and that the bank had endorsed and assigned the note to her. Johnson also alleged she did not press Philyaw for payment, and the two of them had orally agreed the note would become due at Philyaw’s death. Johnson claimed she was entitled to the principal and interest due unto the note, totaling as of July 21, 1981, the sum of $37,371.90.
The original note was attached to the claim. The note was signed by Ivan Orrels on the top, and by J.O. Philyaw on the bottom line. The signature of Jeryl T. Johnson appears beside Orrels’ signature.
E.C. Clements, the attorney for the estate, filed an answer on April 29, 1982, contesting the claim on the ground it was barred by the statute of limitations, pleading Miss. Code Ann. §§ 15-1-3, 15-1-49, and 15-1-73. On August 25, 1982, Clements entered into a stipulation with Land-man Teller, attorney for Johnson, that reputable witnesses would testify as to the truth of the claim, but the estate was not waiving its statute of limitations defense.
Following some kind of hearing or argument, not transcribed, the chancellor wrote a letter opinion upholding the claim, and on November 8, 1982, entered a final decree allowing the claim for $37,371.90 plus interest, and directing that the executrix pay it from estate assets.
No appeal was taken from this decree.
On February 4, 1983, Johnson filed a petition in the chancery court to compel payment of her claim, requesting therein that the executrix be required to file an inventory of assets. This petition also attached a copy of a deed of trust from Mrs. Braxton to Philyaw to secure payment of $100,000. On February 17, 1979, Philyaw sold Mrs. Braxton approximately 97 acres of land in Issaquena County for $100,000 for which she executed four promissory notes of $25,000 each, due on February 17 of 1980, 1981, 1982 and 1983, and which were secured by the deed of trust duly filed of public record.
The petition further alleged Mrs. Brax-ton had paid the first two notes, but the last two remained unpaid and were assets of the estate. The petition prayed that following hearing, if the claim had not been paid, that the court require resort to foreclosure of the deed of trust, a full inventory of assets, and if further delay was caused by the executrix Mrs. Braxton that she be removed and another person appointed administrator de bonis non with Will annexed. That same day, February 4, 1983, the chancellor by decree set the cause for hearing on February 28.
On February 24 Mrs. Braxton filed an answer and an affirmative defense to the petition. She admitted that Johnson had established her claim, but denied that there were any assets from which she could be paid. Affirmatively, Mrs. Braxton alleged that long prior to his death Philyaw had given the notes to her, which constituted an inter vivos gift fully perfected. She alleged Philyaw’s bank account had been jointly owned by the decedent and Annie Sue Reeves with right of survivorship, and the estate was insolvent.
Mrs. Braxton also alleged that she had been adjudicated a bankrupt in the United States Bankruptcy Court of the Southern District of Mississippi, and all legal proceedings against her were stayed by that Court on November 10, 1982.
She prayed that all proceedings against her be stayed, that the estate of Philyaw be declared insolvent, and the deed of trust be declared void because the unpaid notes had been given to her.
On March 21, 1983, Johnson moved to strike the affirmative defense of Mrs. Braxton. In support of the motion, Johnson alleged that in Braxton’s petition for bankruptcy she had listed as one of the debts due by her an indebtedness to the Philyaw estate of $52,000 for purchase of land, and that, therefore, she was estopped to deny it. Johnson also asserted that the purported gift of the notes was void under Miss. Code Ann. § 15-3-3. In the same *1235 motion, Johnson moved to have Mrs. Brax-ton removed as executrix.
On July 12, 1983, Johnson filed a petition for the court to appoint her administratrix of the estate. The petition alleged Mrs. Braxton died March 25, 1983, and that her Will had been presented for probate by her three children. The petition prayed that as administratrix she be allowed to pursue the claim of the Philyaw estate against Mrs. Braxton’s estate, and to employ legal counsel to assist her. On the same day, July 12, the chancellor entered a decree granting the petition and appointing Johnson administratrix de bonis non with Will attached.
On August 22, 1983, Johnson as adminis-tratrix filed a petition to require Mrs. Brax-ton’s three children, as executors of her estate, to deliver the promissory notes executed by her to Philyaw. On August 26 the chancellor by decree set October 3 as a date for hearing on the petition.
A decree was entered October 3 reflecting that the four notes had been delivered, and the first two had been paid by Mrs. Braxton to Philyaw during his lifetime. The decree further recited that the last two remained unpaid and bore interest at the rate of six percent (6%) per annum. Because the notes had been delivered, the October 3 hearing was dispensed with.
On December 15 Johnson as administra-trix by petition reported to the court that she had employed legal counsel to collect the claim of the estate against the Braxton estate to satisfy Johnson’s individual claim for $40,750.32 as of November 8, 1982. She alleged a substituted trustee had been appointed under the deed of trust, and that following an adversarial hearing the bankruptcy court had removed the land from the bankruptcy proceedings. The bankruptcy court had then lifted the automatic stay theretofore imposed against Johnson as administratrix of the Philyaw estate.
On January 16,1984, Johnson as adminis-tratrix filed a report to the court. She reported that following institution of foreclosure proceedings the substituted trustee had, on January 13, 1984, the day of the foreclosure sale, received in satisfaction of the indebtedness $59,737.13 from a “party or parties in interest” and the unpaid notes were to be assigned to some party without recourse.
From the $59,737.13, the administratrix reported she had paid $5,410.54 to the law firm which had represented her, as a reasonable fee for the collection of the notes which had been referred to the attorneys for collection. Also, $114.40 had been for foreclosure costs, another $1,005 to the funeral home, and $44,617 in payment of Johnson’s individual claim against the estate. The petition then reported she held approximately $8,600 in estate assets, and she would soon be filing her first and final accounting.
On May 29 Johnson as administratrix filed her first and final accounting, reciting events of the estate as above related, and reporting a cash balance of $8,590.19, representing the net assets of the estate. She asked that the three Braxton children be summoned to appear to show cause why the final accounting should not be approved, and that at the hearing a reasonable fee be fixed for her as administratrix and for her solicitor.
The chancellor entered a decree setting July 6 for the date of the hearing.
On June 27 the three Braxton children, represented by different counsel, individually and as executors of the Braxton estate, responded. They denied any indebtedness due by Mrs. Braxton. They alleged that pleadings had been filed in the bankruptcy court to show Mrs. Braxton did not owe the Philyaw estate any money, and that they were filing a motion in the chancery court to reconsider its previous rulings. The response further alleged that neither Johnson as administratrix, nor her solicitor, was entitled to any of the $8,590.19, and that Johnson should be required to return to the Philyaw estate the money paid her.
Darryl Braxton that same day individually filed a motion for the court to reconsider the allowance of the Johnson claim against the Philyaw estate.
The motion alleged facts which, had they been timely made, would have supported a *1236 denial of Johnson’s original claim against the Philyaw estate; and, indeed, make it appear odd that the claim was ever allowed.
By decree of July 11,1984, the chancellor overruled Darryl Braxton’s motion, and rejected all claims of the Braxton children that Mrs. Braxton was not indebted to the Philyaw estate. The court deferred setting a reasonable administratrix fee or a solicitor’s fee pending hearing from the adminis-tratrix and solicitor. Other than this, the decree approved and confirmed the final accounting.
On August 8, 1984, the chancellor allowed the administratrix a fee of $1,500 and her solicitors a fee of $4,500.
Darryl Braxton has appealed.
LAW
I. NO APPEAL TAKEN FROM DECREE ALLOWING JOHNSON’S CLAIM.
Darryl first contends Johnson’s claim against the Philyaw estate was barred by the statute of limitations, and the chancellor erred in holding otherwise. Johnson answers that the decree of the chancery court on November 8, 1982, allowing this claim was a final deciee, and since no appeal was taken from this decree, it is binding upon the Philyaw estate. Darryl responds that he had until the final decree closing the estate to decide whether or not to appeal.
The question therefore is whether the time for an appeal for an administrator or executor unhappy with a decree allowing a contested claim runs from the date of such decree or from the date of the decree finally closing the estate. Darryl has not seen fit to cite this Court with any apposite authority supporting his response to Johnson.
We agree with Johnson, that the time for any appeal from a chancellor’s decision on the claim started on the date of the decree allowing it.
Miss. Code Ann. § 91-7-165 is the statutory procedure for contested creditors’ claims. Miss. Code Ann. § 11-51-9 recognizes final decrees include “matters testamentary and of administration ...” Miss.Code Ann. § 11-51-99 specifically authorizes executors or administrators to appeal from any decree affecting them in their fiduciary capacity.
While the specific jurisdictional question raised by Johnson has never been addressed by this Court, it appears that appeals by administrators or executors unhappy with a decree allowing a contested claim have generally been taken from that decree. See: McKellar’s Estate v. Brown, 404 So.2d 550 (Miss.1981); Wooley v. Wooley, 194 Miss. 751, 12 So.2d 539 (1943); Ellis v. Berry, 145 Miss. 652, 110 So. 211 (1926).
That the administrator or executor’s time to appeal begins to run from date of the decree allowing the claim is supported by most of the authorities from other states which have addressed this question. See: Parsons v. M.E. McCabe & Son, 127 Kan. 847, 275 P. 173 (1929); In re Swanson’s Estate, 239 Iowa 294, 31 N.W.2d 385 (1948); In re Hildreth’s Estate, 113 Vt. 26, 28 A.2d 633 (1942).
There is, however, some contrary authority. See: In re Naegely’s Estate, 31 Cal. App.2d 470, 88 P.2d 715 (1939); In re Gooder’s Estate, 68 S.D. 415, 3 N.W.2d 478 (1942); In re Allen’s Estate, 175 Wash. 65, 26 P.2d 396 (1933).
We find the better view is that time for an appeal should run from the date of the decree on the claim.
The efficient and orderly administration of estates and payment of all just debts without unjustified delay compels our conclusion. To permit an administrator to wait until an estate is otherwise ready for closing before deciding whether or not to appeal a decree allowing a claim would countenance outrageous postponements in paying the indebtednesses due by the estate. Moreover, an administrator cannot close an estate until there has been a final adjudication as to precisely what debtors are due by the estate, which he has a duty to pay. See: Miss.Code Ann. § 91-7-291; Fidelity & Deposit Co. v. Doughtry, 181 *1237 Miss. 586, 179 So. 846 (1938); Walker v. Woods, 166 Miss. 471, 148 So. 354 (1933).
The time for taking an appeal from the November 8,1982, decree having long since expired, this Court is without jurisdiction to hear any defense to Johnson’s claim against the Philyaw estate. Miss. Code Ann. § 11-51-5.
II. DID MRS. BRAXTON OR HER ESTATE EVER HAVE HER DAY IN COURT TO PROVE SHE WAS NOT INDEBTED TO THE PHILYAW ESTATE?
Darryl also contends that although there was a disputed factual issue as to whether or not his mother Mrs. Braxton was indebted to the Philyaw estate, no hearing or decree was ever entered on this issue. We agree.
A chronology of events is attached as an appendix to this opinion. It may be seen that on February 24,1983, she specifically denied owing the Philyaw estate any sum of money. Johnson moved to strike this affirmative defense, but thereafter the record shows nothing to indicate how the issue was ever resolved. The chancellor held ex parte hearings and appointed Johnson as administratrix with full power and authority to enforce her claim against Mrs. Braxton’s estate. Before this decree was entered, Mrs. Braxton’s estate was entitled to an adjudication by the chancery court of whether or not she in fact owed the Phi-lyaw estate any money. Determination of this issue should be resolved on remand of this case.
III. DID THE CHANCELLOR ERR IN HIS ALLOWANCE OF ATTORNEY’S FEES?
Since this case is being remanded, the chancellor should consider on remand what portion of the attorney’s fees should be paid by Johnson individually.
Attorney’s fees and administratrix fees are allowable by the chancellor and normally are within that judge’s discretion. Miss. Code Ann. §§ 91-7-281; 91-7-299; Brown v. Franklin, 166 Miss. 899, 145 So. 752 (1933). However, we have stated that attorney’s fees were unauthorized where the services were rendered for the sole benefit of an individual interested in the estate, as against the others interested. Clarks-dale Hospital v. Wallace, 187 Miss. 834, 193 So. 627 (1940). In that case, this Court stated:
It is argued on behalf of the hospital that it was to the interest of all concerned that the Court pass on the validity of request to it, which involved the construction of the will. In a sense, that is true, but it does not follow as a matter of course that the costs are to come out of the whole estate. Putting it differently, the position of the hospital is that it has the right to make some successful adversaries pay the attorney’s fee incurred by it in bringing about their defeat. That would be in the nature of punitive damages, which is not allowable in a litigation of this character. [Emphasis added]
187 Miss, at 842-43, 193 So. at 628.
Johnson was the only creditor of the Philyaw estate. The record reveals that the only pleading for motion filed by Johnson that was not in furtherance of recovering her claim against the estate was the payment of an outstanding funeral bill. Since virtually every action taken by Johnson as administratrix was done to insure that a claim would be collected, and she received such undisputed benefits to the detriment of the legatees, the chancellor was in error in allowing attorney’s fees of $4,500 to be paid out of the estate.
In addition, Johnson’s claim for attorneys’ fees appears to encompass actions taken by her attorneys before she was appointed administratrix. While the record is unclear on this point, Johnson’s attorneys did proffer to the chancellor a list of all filings and motions that they filed on behalf of Johnson. The chancellor considered this schedule in allowing fees to Johnson’s attorneys. This listing includes every document filed on behalf of Johnson, with several of these documents preceding Johnson’s appointment as administratrix.
*1238 When pursuing attorney’s fees under Miss. Code Ann. § 91-7-281 (1972), a lawyer should submit a time sheet to the chancellor listing hours spent serving the estate and the fee normally charged for such service. Attorney’s fees are not recoverable from the estate for services performed before the appointment of an administrator.
Accordingly, we find the Johnson claim unassailable but reverse and remand for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur as to Parts II and III.
PRATHER, J., DAN M. LEE, P.J., and ROBERTSON, J., dissent as to Part I.
ZUCCARO, J., not participating.
APPENDIX
A chronology of relevant events is as follows:
1981
April 21 Decree admitting Philyaw Will to probate and appointing Mrs. Braxton executrix.
July 22 Johnson files $37,371.90 creditor’s claim for probate.
1982
April 27 Answer for executrix Mrs. Brax-ton contesting claim.
November 8 Decree allowing claim.
1983
February 4 Johnson petitions court to compel payment of her claim and for an inventory of assets, alleging Mrs. Braxton owed Philyaw estate $50,000 principal remainder of $100,000 debt, secured by deed of trust on realty, and asking court to direct foreclosure of Johnson claim not paid.
February 24 Mrs. Braxton files an answer denying she owed Philyaw estate any sum of money.
March 21 Johnson moves to strike Mrs. Braxton’s answer because in a contemporaneous bankruptcy proceeding filed by her she had listed $52,000 indebtedness to Philyaw estate.
March 25 Mrs. Braxton dies.
July 12 Johnson files petition to appoint her administratrix de bonis non of Philyaw estate, alleging death of Mrs. Braxton.
July 12 Decree appointing Johnson adminis-tratrix.
August 22 Petition by Johnson as adminis-tratrix to require Mrs. Braxton’s children to deliver Mrs. Braxton’s promissory notes to Philyaw.
August 26 Decree setting October 23 as date for hearing on petition.
October 3 Decree entered reciting four promissory notes had been delivered, two of which had been paid in Phi-lyaw’s lifetime, and dispensing with hearing.
December 15 Johnson as administratrix reports to court she had employed legal counsel to collect debt of Philyaw estate against Braxton estate, and bankruptcy court had lifted stay against foreclosure of Braxton property. Substituted trustee appointed who institutes foreclosure proceedings.
1984
January 13 Substituted trustee paid $59,-737.13 and assigned promissory notes without recourse.
May 29 Johnson files first and final accounting. Summons issued for Brax-ton children.
June 27 Braxton children deny debt due by Mrs. Braxton to Philyaw at his death.
June 27 Darryl Braxton moves court to reconsider its previous ruling that Johnson had a valid claim against Phi-lyaw estate.
July 11 Chancellor rejects claims of Brax-ton children.