# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00426-COA

IN THE MATTER OF THE E.M. RUSH TRUST;                              APPELLANTS
MARY JANE RUSH LENNON, STACY LENNON,
JULIE E.LENNON, ESTATE OF PERRY RUSH
LENNON, ROBERT R. LENNON, JR. AND
DANA R. SCHILLING

v.

LOWREY & FORTNER, P.A.                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/23/2021 |
| TRIAL JUDGE: | HON. MICHAEL CHADWICK SMITH |
| COURT FROM WHICH APPEALED | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | S. WAYNE EASTERLING |
| ATTORNEY FOR APPELLEE: | RICHARD ANTHONY FILCE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | APPEAL DISMISSED - 06/07/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     On September 12, 2019, Lowrey and Fortner, P.A. (Lowrey) filed a motion to

terminate the E.M. Rush Trust on behalf of its clients Mary Jane Rush Lennon, Stacy

Lennon, Julie E. Lennon, the Estate of Perry Rush Lennon, Robert R. Lennon Jr., and Dana

R. Schilling (collectively Lennon).  On January 7, 2020, a hearing was held, and the trial

court granted the motion to terminate the trust.  On May 21, 2020, Lennon emailed Lowrey

and informed Lowrey of their desire to terminate representation.  On May 22, 2020, Lowrey

filed a motion to "Withdraw as Counsel and Authorize Trustee to Distribute Attorney Fees

Upon Closing of the Trust."

¶2.    On June 1, 2020, a hearing was held on Lowrey's motion.  The trial court granted Lowrey's motion to withdraw and ordered the trustee to "distribute $12,589.04 to [Lowrey]" upon termination of the trust.  On June 9, 2020, Lennon filed a motion to "Alter or Amend Order for Award of Disputed Attorney Fees."  A hearing was held to address the motion, and on October 1, 2020, the trial court issued an order reaffirming its award of attorney's fees to Lowrey.  On March 23, 2021, the E.M. Rush Trust was terminated.  On April 20, 2021, Lennon appealed and argued that the trial court erred in authorizing the trust to distribute attorney fees to Lowrey because (1) the Trust's spendthrift clause prohibited the trial court from awarding attorney's fees; (2) the trial court lacked subject matter jurisdiction; and (3) Lennon's new counsel did not receive notice of Lowrey's fee request or the hearing on the fee request.  During this appeal, Lowrey filed a "Motion to Docket and Dismiss Appeal" for lack of jurisdiction.  Lowrey argued, among other things, that Lennon failed to file a notice of appeal within thirty days of the order granting attorney's fees.  Finding the motion is well taken, it is granted and this appeal is dismissed for lack of jurisdiction.

**FACTS**

¶3.    The E.M. Rush Trust was established on March 26, 1964.  Trustmark National Bank (Trustmark) had served as the trustee since its establishment.  On July 2, 2018, Trustmark filed a petition for modification of the E.M. Rush Trust.  Trustmark sent notice to all beneficiaries, informing them of its request to increase its fees as the trustee.[1]  Lennon hired

---

[1] When this motion was filed, the E.M. Rush Trust had almost fifty beneficiaries.

2

Lowrey to represent them during the court proceedings concerning an increase of Trustmark's fees. On June 24, 2019, Trustmark filed a motion to resign as trustee of the E.M. Rush Trust, and it requested that the trial court appoint a new trustee. The trial court granted this motion and ordered that Trustmark's resignation would be effective in ninety days allowing the court time to determine whether to appoint a new trustee or terminate the trust.

¶4. On September 12, 2019, Lowrey filed a motion on behalf of Lennon to terminate the trust and distribute the trust assets.[2] On January 7, 2020, the trial court held a hearing. At the hearing, the trial court determined that termination of the trust was appropriate. On May 21, 2020, Lennon emailed Lowrey, informing it that its services were no longer wanted.

¶5. On May 22, 2020, Lowrey filed a motion to "Withdraw as Counsel and Authorize Trustee to Distribute Attorney Fees upon Closing of Trust." On June 1, 2020, the trial court held a hearing on the matter. That same day, the trial court issued an "Order Granting Motion for Withdrawal as Counsel and for Distribution of Attorney Fees Upon Closing of the Trust." In that order, the trial court ruled that upon closing of the E.M. Rush Trust, the trustee "is authorized and directed to distribute $12,589.04 to Lowrey & Fortner P.A."

¶6. On June 9, 2020, Lennon filed a motion to "Alter or Amend Order for Award of Disputed Attorney Fees." In the motion, Lennon stated that they disputed the fees, the fees

---

[2] Lowrey stated in its brief that it "undertook to complete service of process on all of the beneficiaries as required by law." Twenty-nine beneficiaries signed "waivers and joinders." Seven beneficiaries were personally served, two beneficiaries "completed a notice of acknowledgment of service by mail," and five beneficiaries were served by publication because they could not be found. Lowrey also "published service on any and all unknown heirs or beneficiaries of the trust . . . ."

were unreasonable, no proper notice was provided, the court did not have authority to award the fees, and the spendthrift clause in the trust prohibited the distribution of the fees. A hearing was held to address the motion. On October 1, 2020, the trial court found that its initial award of attorney's fees was proper. The trial court stated that all parties had proper notice, no objections were made to the award of fees, it had authority to award attorney's fees in trust litigation, and the fees were reasonable.

¶7. On March 23, 2021, the trial court issued a final judgment terminating the trust. The judgment required the trustee to "distribute the trust assets to the respective beneficiaries . . . the sum of $58,750.00 . . . ." The $12,589.04 owed to Lowrey was not mentioned in the final judgment.

¶8. On April 20, 2021, Lennon filed their appeal, arguing that the trial court erred in authorizing the trustee to distribute attorney's fees to Lowrey in the June 1, 2020 order because: (1) the Trust's spendthrift clause prohibited the trial court from awarding attorney's fees; (2) the trial court lacked subject matter jurisdiction; and (3) Lennon's new counsel did not receive notice of the Lowrey's fee request or the hearing on the fee request.

¶9. On October 8, 2021, Lowrey filed a "Motion to Docket and Dismiss Appeal." In the motion, Lowrey argued three reasons why the appeal should be dismissed. First, Lennon should have filed a motion for interlocutory relief under Mississippi Rule of Appellate Procedure 5 by October 22, 2020, within twenty-one days of the October 1, 2020 order. Second, Lowrey argues that instead of seeking interlocutory relief, Lennon "could have requested certification as a final judgment for immediate appeal." Third, Lowrey argued that

pursuant to Mississippi Rule of Appellate Procedure 4(a), Lennon should have filed the notice of appeal "within [thirty] days after [entry of] the . . . order appealed from." In essence, Lowrey argues that Lennon's appeal should be dismissed for lack of jurisdiction. Upon review of the record, we find that the motion to dismiss is well taken and granted. Therefore, this appeal is dismissed for lack of jurisdiction.

## ANALYSIS

¶10.    On June 1, 2020, the trial court held a hearing on Lowrey's motion to "Withdraw as Counsel and Authorize Trustee to Distribute Attorney Fees Upon Closing of Trust." That same day, the trial court issued an order granting Lowrey's motion to withdraw and ordering the E.M. Rush Trust's trustee to pay Lowrey $12,589.04 "[u]pon closing of the Trust . . . ." On June 9, 2020, Lennon filed a motion to "Alter or Amend Order for Award of Disputed Attorney Fees." On October 1, 2020, after a hearing on Lennon's motion, the trial court issued an order finding his initial award of attorney's fees upon termination of the trust to be proper. Lennon filed their notice of appeal on April 20, 2021, after the thirty-day period proscribed by Mississippi Rule of Appellate Procedure 4(a).

¶11.    The threshold question this Court must answer is whether we have jurisdiction to hear Lennon's appeal concerning the orders from June 1, 2020, and October 1, 2020, awarding Lennon attorney's fees upon termination of the E.M. Rush Trust. There is no caselaw directly on point. However, there are two cases that prove instructive and are analogous to the present case: *In re Estate of Pavlou*, 308 So. 3d 1284 (Miss. 2021), and *In re Estate of Philyaw*, 514 So. 2d 1232 (Miss. 1987). Both of these cases explain that an appeal made

5

from an order during the administration of an estate that is still open should be filed within thirty days of that order, not upon the estate being finally closed.

¶12.    In *Philyaw*, Jeff Oren Philyaw died testate on April 4, 1981, and in his will, he devised his estate to Gladys Marie Braxton. *In re Est. of Philyaw*, 514 So. 3d at 1233. Braxton was also appointed as the executrix of the estate. *Id*. On July 11, 1981, Jeryl Johnson filed a claim against the estate for $37,371.90, stating that she had signed a promissory note as an "accommodation endorser" for Philyaw for $20,000 to Merchants National Bank of Vicksburg. *Id*. A hearing was held on Johnson's claim, and on November 8, 1982, the trial court issued a final decree, ordering Braxton to pay Johnson from the estate's assets. *Id*. at 1234. Braxton did not file an appeal from this decree. *Id*. Johnson was also never paid. *Id*.

¶13.    On July 12, 1983, Johnson petitioned the trial court to appoint her as the Philyaw estate's executrix because Braxton had died. *Id*. On December 15, 1983, Johnson informed the trial court that she had hired legal counsel to collect the claim against the Braxton estate "to satisfy Johnson's individual claim for $40,750.32 as of November 8, 1982." *Id*. Johnson was appointed as administratrix, and on May 29, 1984, Johnson filed her accounting of the estate, and reported that the estate had a cash balance of $8,590.19. *Id*. On June 27, 1984, a hearing was held to determine whether Johnson's final accounting should be approved and to fix a reasonable fee for her work as administratrix. *Id*. Braxton's children attended the hearing, and Daryll Braxton, filed a motion for the court to "reconsider the allowance of the Johnson claim against the Philyaw estate." *Id*. On July 11, 1984, the trial court denied this motion. *Id*. at 1236. Daryll Braxton appealed. *Id.*

¶14. On appeal, the Mississippi Supreme Court had to determine "whether the time for an appeal for an administrator or executor unhappy with a decree allowing a contested claim runs from the date of such decree or from the date of the decree finally closing the estate." *Id*. at 1236. The supreme court held that "the time for any appeal from a chancellor's decision on the claim started on the date of the decree allowing it." *Id*.

¶15. The supreme court noted that there "appears" to be a history of appeals that administrators or executors dissatisfied with decrees for contested claims have taken after the decree was issued and not at the closing of an estate. *Id*. The court also explained that the "time for an appeal should run from the date of the decree on the claim" and provided the following explanation:

> The efficient and orderly administration of estates and payment of all just debts without unjustified delay compels our conclusion. To permit an administrator to wait until an estate is otherwise ready for closing before deciding whether or not to appeal a decree allowing a claim would countenance outrageous postponements in paying the indebtednesses due by the estate. Moreover, an administrator cannot close an estate until there has been a final adjudication as to precisely what debtors are due by the estate, which he has a duty to pay. *Id*. at 1237.

¶16. In *Pavlou*, the Mississippi Supreme Court had to answer a similar question. Kenneth Rogers sued Costas Pavlou for breach of contract in county court. *In re Est. of Pavlou*, 308 So. 3d at 1285 (¶3). However, during litigation, Pavlou died. *Id*. at 1286 (¶3). Pavlou's estate became a party to the breach-of-contract case. *Id*. The attorneys representing the estate in the breach-of-contract lawsuit also became counsel for the administration of the estate. *Id*. Rogers's claims against the estate were ultimately dismissed, and he appealed to circuit court. *Id* at (¶4). After the lawsuit ended, the executor of the estate filed a "Petition

7

for Authority to Disburse Funds to Pay Outstanding Attorney and Accountant Fees." *Id*. at (¶5). Rogers filed a response to the petition, opposing the payment of attorney's fees because they were incurred during the breach-of-contract lawsuit and not during the administration of the estate. *Id*. at (¶6). Rogers also stated that granting the payment of attorney's fees would make the Pavlou estate insolvent. *Id*. The trial court granted the "Petition for Authority to Disburse Funds to Pay Outstanding Attorney and Accountant Fees." *Id*. at (¶7). Rogers appealed. *Id*. at 1287 (¶8).

¶17. The supreme court reviewed whether it had jurisdiction over the appeal after the chancellor granted the executor's motion to disburse funds while the estate was still open. *Id*. at 1287 (¶9). At the time, the chancellor's order granting the motion had been issued, but there was no final judgment closing the estate. *Id*. The court noted that "generally, only final judgments are appealable." *Id*. However, the court noted that "an order that finally resolves a claim against an estate is final and appealable although the estate remains open." *Id*. at 1288 (¶12). The Mississippi Supreme Court also explained that the Mississippi Court of Appeals "has exercised jurisdiction over timely appeals from orders that finally determined probate claims although the estates remained open." *Id*. at (¶13); *see In re Est. of Holmes*, 188 So. 3d 1229, 1232 n.3 (Miss. Ct. App. 2015) ("[B]oth the Mississippi Supreme Court and this court have exercised appellate jurisdiction over timely appeals from orders either allowing or disallowing claims against still-open estates."); *In re Est. of King*, 303 So. 3d 423, 425 (¶8) (Miss. Ct. App. 2020) ("[T]he Supreme Court and this Court have specifically held that a judgment allowing or disallowing a creditor's claim against an estate is final and

8

appealable."). The court ultimately concluded that "based on *Philyaw* and its progeny, the order granting the disbursement of attorney fees and denying Rogers's objection to the disbursement qualified as a final, appealable judgment." *Id*.

¶18. The analysis in *Philyaw* and *Pavlou* and this Court's precedent lead us to conclude that the trial court's October 1, 2020 order was final for purposes of appeal. The Mississippi Supreme Court and this Court have held that an order resolving a claim against an estate is "final and appealable although the estate remains open." *See Pavlou*, 308 So. 3d at 1288 (¶12); *see also In re Est. of Holmes*, 188 So. 3d at 1232 n.3; *In re Est. of King*, 303 So. 3d at 425 (¶8). This same reasoning can be applied to the trial court's order in this case, which was a final order regarding attorney's fees, even though the trust remained open. In the present case, the order authorizing the E.M. Rush Trust to pay attorney's fees to Lowrey upon termination of the trust "finally resolve[d]" Lowry's claim. *See Pavlou*, 308 So. 3d at 1288 (¶12). After October 1, 2020, Lowrey was no longer involved in decisions concerning the administration or termination of the E.M. Rush Trust. Therefore, "the time for any appeal from [the] chancellor's decision" on Lowrey's claim "started on the date of the decree allowing it." *See Philyaw*, 514 So. 2d at 1236.

¶19. The proper time for Lennon to bring this appeal was within thirty days of the trial court's October 1, 2020 order adjudicating the claim for attorney's fees against the trust. *See* M.R.A.P. 4(a). Mississippi Rule of Procedure 4(a) is clear from its mandate that a notice of appeal must be filed within "**within 30 days** after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a) (emphasis added). Further, the supreme court and this Court

have been equally clear that the notice of appeal is a jurisdictional prerequisite to invoke appellate review. *See Calvert v. Griggs*, 992 So. 2d 627, 631 (¶9) (Miss. 2008); *McChester v. McChester*, 300 So. 3d 1035, 1038 (¶13) (Miss. Ct. App. 2020). Because Lennon failed to perfect their appeal in compliance with Rule 4 of the Mississippi Rules of Appellate Procedure, this Court does not have jurisdiction, and this appeal is dismissed.

¶20. **APPEAL DISMISSED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**